**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

DETRICK D. CROSTON
ADC #131172                                                                                    PLAINTIFF

v.                                                 4:24-cv-01070-DPM-JJV

USSERY, Sergeant,
Faulkner County Detention Center, Unit 1; *et al.*                        DEFENDANTS

**RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D. P. Marshall Jr.   Any party may serve and file written objections to this Recommendation.   Objections should be specific and include the factual or legal basis for the objection.   If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation.   Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.      INTRODUCTION**

Detrick D. Croston ("Plaintiff") has filed a *pro se* Complaint, pursuant to 42 U.S.C. § 1983, raising claims against jailers at the Faulkner County Detention Center ("FCDC").   (Doc. 2.) Plaintiff alleges that on September 2, 2024, he was forced to be housed at Unit 2 of the FCDC where Defendants Hodge, Robinson, Nipps, and Bryant "used blankets to cover all of the windows which caused the security staff . . . to be denied of the viewing of the Plaintiff and other inmates held in cell located in the booking area of Unit 2." (*Id.* at 5.)   Plaintiff says, "While being held in a[n] unsupervised cell under the above stated conditions, the Plaintiff was hog tied with blankets

1

by inmates then physically and sexually assaulted." (*Id.*) "The Plaintiff yelled for help [and] Officer Nipps and Officer [Hodge] later came to the holding cell where they found the Plaintiff on the floor, hog tied." (*Id.*) "After being found … Plaintiff was denied [a] medical examination by the medical staff nor was the PREA [Prison Rape Elimination Act] protocol in any way followed." (*Id.* at 6.) Based on these facts, Plaintiff alleges that Defendants Hodge, Robinson, Nipps, and Bryant failed to protect him from being assaulted by unknown detainees, and that afterwards, Defendants Nipps and Hodge were deliberately indifferent to his serious medical needs. (Doc. 2.) Plaintiff brings these claims against Defendants in their personal capacities only, and monetary damages are the only relief sought. (*Id.*) All other claims and Defendants have been previously dismissed without prejudice. (Doc. 6.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to qualified immunity. (Docs. 37-40.) Plaintiff has responded, (Docs. 42-43), and Defendants have filed a Reply. (Doc. 49.) After careful review and consideration, I recommend Defendants' Motion be GRANTED, Plaintiff's claims against the remaining Defendants be DISMISSED with prejudice, and this case be CLOSED.

## II.    SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating

there is a genuine dispute of material fact for trial.   *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner,* 663 F.3d 336, 340 (8th Cir. 2011).   In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party."   *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

## III.    FACTS

The facts are straightforward and generally not disputed.   Defendants do not deny that the windows of the unit were covered by "green blankets."   (Doc. 39-3 at 11:9.)   And both sides agree the assault was a surprise.   (*Id.* at pp. 13-19.)   Plaintiff testified he largely kept to himself while at the FCDC and did not appear to have any enemies.   (*Id.* at pp. 16-17.)

Plaintiff testified, "I had my blanket over my head, laying there asleep, and all I know was I felt people hitting me, and there's people holding me down."   (*Id.* at 13:12-14.)   Plaintiff described the assault as follows:

> They were hitting me in the side of my head and hitting me in my back and in my ribs. And then [ ] when I was trying to get up, I got kicked in the face. And when I fell down, that's when they put the other blanket over my head, and they were holding me and tying me up with my hands behind my back and tied my feet [ ] and tied my ankles together and tied them to my hands, and then [ ] I was yelling for the officer – – the booking officer. People play so many games with them, and they ignore the inmates in the holding cells so much, they wouldn't come for a while. And then when they finally came, [Defendant Nipps] opened the door, him along with [Defendant Hodge], and I was laying on the floor, right there on the door. And [Defendant Nipps] had to untie me.

(*Id.* at 14:14 -15:7.)

The alleged assault lasted 1 to 5 minutes. (*Id.* at 21:1-9.)   Plaintiff described the sexual assault as, "He - - they stuck their fingers in my rectum."   (*Id.*at 19:25.)   And after he was interviewed by jailers, Plaintiff says he called the PREA hotline.   (*Id.* at 20.)   Following the alleged assault, the Plaintiff was moved to another unit and had no further issues at the FCDC. (*Id.*

3

at 23:15-17.)

## IV.    ANALYSIS

### A.    Qualified Immunity

Defendants argue they are entitled to summary judgment based on the doctrine of qualified immunity.    Qualified immunity protects government officials from § 1983 liability for damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."    *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021).    Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide.    *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019).    Defendants are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to Plaintiff, does not establish a violation of a constitutional right; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful.    *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021).    Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."    *Pearson* 555 U.S. at 236; *Mogard v. City of Milbank*, 932 F.3d 1184, 1188 (8th Cir. 2019).    I find Defendants are entitled to qualified immunity based on the first prong of the analysis.

Although prison officials have an Eighth Amendment obligation to "take reasonable measures to guarantee inmate safety," they are not liable "every time one inmate attacks another." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018); *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007).    Instead, prison officials violate the Eighth Amendment "only when they exhibit a deliberate or callous indifference to an inmate's safety."    *Patterson,* 902 F.3d at 851; *Tucker v.*

*Evans*, 276 F.3d 999, 1001 (8th Cir. 2002). Thus, to defeat qualified immunity, Plaintiff must have evidence that: (1) objectively, there was a substantial risk that he would be seriously harmed by the unknown assailants; and (2) subjectively, Defendants knew of, but deliberately disregarded, that substantial risk of serious harm. *See Hodges v. Dept. of Corr.,* 61 F.4th 588, 591-92 (8th Cir. 2023); *Axelson v. Watson*, 999 F.3d 541, 546 (8th Cir. 2021). This case turns on the second element of deliberate indifference, which is a "stringent standard of fault" requiring "proof of a reckless disregard of the known risk." *Scott v. Baldwin,* 720 F.3d 1034, 1036 (8th Cir. 2013); *Doe v. Flaherty*, 623 F.3d 577, 584 (8th Cir. 2010). In other words, to establish deliberate indifference the defendant must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hodges,* 61 F.4th at 592.

Without question, the assault here was a surprise to both Plaintiff and Defendants. It is well settled prison officials cannot be held liable for failing to prevent a surprise attack. *See Patterson*, 902 F.3d at 845; *Schoelch v. Mitchell*, 625 F.3d 1041, 1048 (8th Cir. 2010). For this reason, Defendants are entitled to qualified immunity.

I have also carefully considered Plaintiff's theory that blankets covering the windows allowed for the unknown attackers to assault Mr. Croston. Although troubling, that still does not prove that Defendants knew of, but deliberately disregarded, any substantial risk of serious harm. Jail is inherently dangerous. But an "official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation," does not rise to the level of deliberate indifference. *Blair v. Bowersox,* 929 F.3d 981, 988-89 (8th Cir. 2019); *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998). Because there is no evidence from which a reasonable juror could find that Defendants acted with deliberate indifference, I conclude they are

entitled to qualified immunity on Plaintiff's failure to protect claims. *See Johnson v. Scurman*, 145 F.4th 897, 904 (8th Cir. 2025) (guards' failure to secure other prisoners in their cells before allowing the plaintiff out of his cell, as required by policy, was at most negligence and not deliberate indifference); *Patterson*, 902 F.3d at 852 (guard's negligent or grossly negligent failure to inspect and monitor a barrack where an attack occurred did not rise to the level of deliberate indifference); *Tucker*, 276 F.3d at 1001-02 (guard's failure to properly interpret an argument between prisoners and supervise the barrack where the prisoner was later killed was at most gross negligence).

I also find Defendants Nipps and Hodge were not deliberately indifferent to Plaintiff's serious medical needs.    First, a medical need is objectively serious if it has been "diagnosed by a physician as requiring treatment" or one "so obvious that even a layperson would easily recognize the necessity for a doctor's attention."    *Presson v. Reed,* 65 F.4th 357, 366 (8th Cir. 2023); *De Rossitte v. Correct Care Sols., LLC*., 22 F.4th 796, (8th Cir. 2022).    Based on the facts before me, I find no evidence to support a claim that Mr. Croston's medical need was objectively serious. Rather, it appears that Mr. Croston wanted a "rape kit" to be performed.    Specifically, he alleged in his Complaint that "Plaintiff was denied medical examination by the medical staff nor was the PREA protocol…followed."    And he testified at his deposition, "I was denied any form of examination.    Photos weren't taken.    I was never called down after I called the PREA hotline.[1]

---

[1] The PREA gives grants money and creates a commission to study the ways to reduce rape in prison. *See* 34 U.S.C. §§ 30301-30309; *Blevins v. Pearson*, Case No. 18-cv-2270, 2018 WL 6814183, at *3 (D. Minn. Nov. 30, 2018), *rec. adopted*, 2018 WL 6807391 (D. Minn. Dec. 27, 2018).    It does not create a private right of action.    *Id.*; *Bowens v. Wetzel*, 674 F. App'x 133, 137 (3rd Cir. 2017); *Krieg v. Steele*, 599 F. App'x 231, 232-33 (5th Cir. 2015); *Schaefer v. Lombardi*, No. 2:16-CV-54 CEJ, 2016 WL 6138626, at *2 (E.D. Mo. Oct. 20, 2016); *see also Cox v. Nobles*, 15 F.4th 1350, 1361 (11th Cir. 2021) (alleged violation of the PREA does not, per se, state a violation of the Eighth Amendment).

There was no follow-up or anything, which protocol clearly states that I was supposed to be treated by medical, seen by medical." (Doc. No. 39-3 at 24:4-8.)

Second, deliberate indifference is a high threshold that goes well beyond negligence or gross negligence. *Hall v. Higgins*, 77 F.4th 1171, 1179 (8th Cir. 2023). To establish deliberate indifference, there must be evidence Defendants "recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Smith v. Lisenbe,* 73 F.4th 596, 599 (8th Cir. 2023) (emphasis in the original). This level of mental culpability is "akin to criminal recklessness." *Presson,* 65 F.4th at 367. Nothing in the record suggests Defendants were deliberately indifferent here. Accordingly, I conclude Defendants are entitled to judgment as a matter of law.

I am sympathetic to the fact that Plaintiff was assaulted while in the custody of Faulker County. And I agree with him that the attack might not have occurred if the windows had not been covered by blankets. But, as previously stated, the bar for proceeding to trial with an Eighth Amendment claim is high. Plaintiff must come forward with evidence that Defendants were subjectively aware of, but deliberately indifferent to, a substantial risk that unknown inmates would attack him. And the evidence here does not meet that high threshold.

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1.    Defendants' Motion for Summary Judgment (Doc. 37) be GRANTED, Plaintiff's claims of failure to protect and deliberate indifference to a serious medical need against Defendants Nipps, Robinson, Hodge, and Bryant be DISMISSED with prejudice, and this case be CLOSED.

2.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not

be taken in good faith.

DATED this 9th day of April 2026.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE